UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **ALLISON ANSCHUTZ** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 3:26-CV-1144-B** |
| | § | |
| **LIFETIME, INC., et al.,** | § | |
| | § | |
| | § | |
| **Defendants.** | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff Allison Anschutz ("Plaintiff")'s Opposed Motion for Alternative Service on Defendant Technogym S.P.A. (Doc. 29). Technogym S.P.A. responded to Plaintiff's Motion (Doc. 32), and Plaintiff replied (Doc. 34). After reviewing the briefing and applicable law, the Court **DENIES** Plaintiff's Motion.

**I.**

**BACKGROUND**

The underlying dispute is between Plaintiff and four defendants: Life Time, Inc.; LTF Club Operations Company, Inc.; Technogym USA Corp.; and Technogym S.P.A.

Defendant Technogym S.P.A. ("Defendant") is an Italian business entity organized under the laws of Italy. Doc. 29, Mot., 1. Defendant's principal place of business is in Cesena, Italy. *Id.* Defendant does not maintain a registered or domestic agent authorized to accept service on its behalf in the United States. *Id.*

On February 27, 2026, Plaintiff initially brought this case in Texas state court. Doc. 1-3, Notice of Removal, Ex. A, 17. Pursuant to Texas's long-arm statute, Plaintiff attempted substitute

service on Defendant through the Texas Secretary of State. Doc. 1-7, Notice of Removal, Ex. D. The case was later removed to federal court, Doc. 1, and Defendant made a special appearance to file a Motion to Dismiss for Insufficient Service of Process. Doc. 13. In response, Plaintiff conceded that the citation and Original Petition were forwarded to a wrong address by the Texas Secretary of State and thus did not establish proof of service. Doc. 24, Resp., 2. As a result, on July 16, 2026, the Court quashed Plaintiff's first attempt at service on Defendant and ordered Plaintiff to effect proper service on Defendant within 45 days. Doc. 26.

On July 23, 2026, Plaintiff e-mailed Defendant's counsel of record, seeking to obtain authorization for counsel to accept service or have Defendant execute a waiver of service under Federal Rule of Civil Procedure 4(d). Doc. 29, Mot., Ex. A, 7. On July 28, 2026, Defendant's counsel responded stating that "[Defendant] has not authorized us to accept service of process on its behalf" and directing Plaintiff to "proceed with Service of Process in accordance with the applicable rules." *Id.*

On July 31, 2026, Plaintiff filed a Motion for Alternative Service on Defendant Pursuant to Rule 4(f)(3). Doc. 29, Mot. It requested this Court to authorize alternative service of process on Defendant via (1) e-mail to Defendant's counsel of record who appeared and filed the aforementioned motion to dismiss and (2) e-mail to Defendant's corporate e-mail address. *Id.* at 1. Defendant opposed the motion, arguing that it should be denied because Plaintiff did not attempt to provide service through other means provided by the Federal Rules of Civil Procedure and the means for alternative service requested by Plaintiff did not satisfy the requirements of due process. *See* Doc. 32, Resp., 2-6.

The Court considers Plaintiff's Motion below.

## II.

## LEGAL STANDARD

In deciding whether to permit alternative service, a court must determine whether Federal Rule of Civil Procedure 4 ("Rule 4") allows the requested means of alternative service; whether it should exercise its discretion to permit these alternative means; and whether alternative service through these means would be consistent with the Due Process Clause of the United States Constitution.

Rule 4 permits service of process on a foreign business entity "in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery." FED. R. CIV. P. 4(h). Rule 4(f) identifies three ways an individual in a foreign country may be served. First, "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." *Id.* 4(f)(1). Second, "by a method that is reasonably calculated to give notice" when "there is no internationally agreed means, or if an international agreement allows but does not specify other means." *Id.* 4(f)(2). And third, "by other means not prohibited by international agreement, as the court orders." *Id.* 4(f)(3).

Courts have broad discretion to allow or disallow alternative service on the basis of various factors like fairness and judicial economy. *See Sec. & Exch. Comm'n v. Millennium Bank*, No. 7:09-CV-050-O, 2009 WL 10689097, at *1 (N.D. Tex. Oct. 21, 2009) (O'Connor, J.) (citation omitted) ("'The task of determining when the particularities and necessities of a given case require alternate service of process' is placed squarely within the sound discretion of the district court.").

However, the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution require service to be "reasonably calculated, under all the circumstances, to

apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

## III.

## ANALYSIS

Before the Court is Plaintiff's request for alternative service "by other means not prohibited by international agreement." FED. R. CIV. P. 4(f)(3). Specifically, she seeks to serve Defendant by e-mail to Defendant's United States counsel of record and Defendant's corporate e-mail address. Doc. 29, Mot., 1. The Court concludes that it has the discretion to allow the requested means of alternative service, but it declines to exercise this discretion.

### A. *The Court Has Discretion Under Rule 4(f)(3) to Permit Alternative Service by "Other Means."*

An initial threshold question is whether Rule 4(f)(3), as a legal matter, permits the Court to grant the means of alternative service requested by Plaintiff. One potential obstacle is the express limitation in Rule 4(f)(3) which requires that the means for service ordered by a court are "not prohibited by international agreement" like the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters (the "Hague Convention"), Nov. 15, 1965, 20 U.S.T. 361.[1] The Hague Convention is a multilateral treaty to which Italy and the United

[1] Plaintiff argues that service by e-mail to Defendant's United States counsel would not implicate the Hague Convention. Article 1 of the Hague Convention provides that it applies to "all cases, in civil or commercial matters, where there is occasion to transmit a judicial . . . document for service abroad." 20 U.S.T., at 362. In *Volkswagenwerk Aktiengesellschaft v. Schlunk*, the Supreme Court held that the Hague Convention does not apply when a plaintiff "attempt[s] to serve process on a foreign corporation by serving its domestic subsidiary which, under state law, is the foreign corporation's involuntary agent for service of process." 486 U.S. 694, 696 (1988). The Supreme Court explained that the relevant state long-arm statute authorized substituted service without sending documents abroad and therefore did not involve the transmission of documents abroad under Article I of the Hague Convention. *Id.* at 706-07. Here, Plaintiff contends that service by e-mail to domestic counsel is analogous to service by delivery to a domestic subsidiary. The Court disagrees. Had Plaintiff successfully effectuated substitute service under Texas's long-arm statute, *Schlunk* would be on point. But Plaintiff's initial attempt at service was unsuccessful. And now Plaintiff seeks alternative service pursuant to Rule 4(f)(3), so the Court must consider whether Rule 4(f)(3) allows service via e-mail under these

States are both signatories.[2] "The purpose of [the Hague Convention] is to simplify, standardize, and generally improve the process of serving documents abroad." *Water Splash, Inc. v. Menon*, 581 U.S. 271, 273 (2017) (citations omitted). It "specifies certain approved methods of service and 'pre-empts inconsistent methods of service' wherever it applies." *Id.* (quoting *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699 (1988)).

At issue is whether service via e-mail would be prohibited by the Hague Convention. The Hague Convention "requires each state to establish a central authority to receive requests for service of documents from other countries." *Menon*, 581 U.S. at 275 (2017) (quoting *Schlunk*, 486 U.S. at 698). However, "[s]ubmitting a request to a central authority is not . . . the only method of service approved by the Convention." *Id.* For instance, "Article 19 clarifies that the Convention does not preempt any internal laws of its signatories that permit service from abroad via methods not otherwise allowed by the Convention." *Id.* And Articles 8, 9, and 10 allow signatories to consent to other methods of service. *See* 20 U.S.T., at 363.

While the Hague Convention expressly authorizes international service through a state's central authority, Defendant does not identify any provision that prohibits service via e-mail in this case. Therefore, the Hague Convention does not prohibit the means of service requested by Plaintiff.

Another potential obstacle is the fact that Plaintiff has failed to make any effort to serve defendant by "internationally agreed means . . . such as those authorized by the Hague Convention." *See* FED. R. CIV. P. 4(f)(1). Under one reading of Rule 4, the "other means" provision in Rule 4(f)(3) is only available when a movant has attempted service through the means authorized by Rules 4(f)(1)

---

circumstances.

[2] See Hague Convention on Private International Law, HCCH Members, https://www.hcch.net/en/states/hcch-members (last visited Aug. 19, 2026) (identifying the contracting nations to the Hague Convention).

or (f)(2), like service through the foreign country's central authority. Under this reading, Plaintiff's motion must fail because she has not attempted service through Italy's central authority.

This reading, however, has been rejected by many courts including the Fifth Circuit. *See Viahart, LLC v. GangPeng*, No. 21-40166, 2022 WL 445161, at *3 (5th Cir. Feb. 14, 2022). "Service pursuant to the Hague Convention listed in subsection (f)(1), does not displace subsection (f)(3), which permits service by other means." *Id.* (citation omitted); *see Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002) (citation omitted) ("[S]ervice of process under Rule 4(f)(3) is neither a 'last resort' nor 'extraordinary relief.' It is merely one means among several which enables service of process on an international defendant."); *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1238 (Fed. Cir. 2010) (rejecting the argument that "service must have been attempted under the Hague Convention before alternative service methods can be employed").

Thus, the Court has discretion to allow alternative service via "other means" pursuant to Rule 4(f)(3). The other means requested by Plaintiff are not prohibited by the Hague Convention, and failure to attempt service under the means expressly provided in the Hague Convention does not foreclose the availability of service through "other means." The Court accordingly turns to the question of whether it ought to allow alternative service in this case.

*B. The Court Declines to Exercise Its Discretion Under Rule 4(f)(3).*

The Court determines that alternative service by e-mail is inappropriate under the present circumstances for three reasons: (1) Plaintiff has not even attempted to serve Defendant through Italy's central authority; (2) there is no evidence that Defendant is evading service or otherwise unreasonably difficult to serve; and (3) it would be unfair for Plaintiff to benefit from a delay that she, in part, created. The Court explains each reason in turn.

First, while a party need not attempt service through a foreign country's central authority, whether a party has done so is one factor that courts routinely consider when exercising its discretion to allow alternative service pursuant to Rule 4(f)(3). "[D]istrict courts are more likely to permit alternative service . . . if service in compliance with the Hague Service Convention was attempted." *Buffalo Pats., LLC v. ZTE Corp.*, 605 F. Supp. 3d 917, 928 (W.D. Tex. 2022) (citation omitted) (alteration in original).[3] The Court accepts this general rule, and thus Plaintiff's failure to serve Defendant through Italy's central authority weighs against her.

In support of her motion, Plaintiff provides a case—*In re OnePlus Tech. (Shenzhen) Co.*—where an appellate court denied mandamus review of an order authorizing alternative service even when the plaintiff did not attempt to serve the defendant under the relevant central authority identified by the Hague Convention. No. 2021-165, 2021 WL 4130643, at *3 (Fed. Cir. Sept. 10, 2021). In the underlying case, the district court allowed alternative service because the plaintiff "would have expended significant time and effort to translate its documents to Chinese and send them to the Chinese Central Authority for service of process." *WSOU Invs. LLC v. OnePlus Tech. (Shenzhen) Co.*, No. 6-20-CV-00952-ADA, 2021 WL 2870679, at *4 (W.D. Tex. July 8, 2021). Similarly, Plaintiff argues that service through Italy's central authority would also be cumbersome.

However, *In re OnePlus* undermines Plaintiff's position. The *In re OnePlus* court explained that it had "concerns about the district court's invocation of alternative means of service under Rule 4(f)(3) based solely on the fact that service under the Hague Convention is more cumbersome than more informal means of service on representatives of a foreign entity." 2021 WL 4130643, at *3. It

[3] Plaintiff argues that this case is factually distinguishable because it involves a foreign country that, unlike Italy, does not consent to service through alternative means via Article 10(a) of the Hague Convention. But this factual difference does not change the validity of the cited proposition, which merely makes an observation about the factors that courts consider when adjudicating requests for alternative service.

also observed that "courts have typically invoked Rule 4(f)(3) only when special circumstances have justified departure from the more conventional means of service." *Id.* Moreover, the *In re OnePlus* court only denied mandamus relief because the applicable standard—abuse of discretion—was highly deferential to the district court. *See id.* at *4.[4] Thus, rather than supporting the proposition that the alternative service Plaintiff requests is commonplace, *In re OnePlus* suggests the opposite.

Second, another factor that courts consider is the extent to which a defendant is unusually difficult to serve through established channels or has attempted to evade service. *See Rio Props., Inc.*, 284 F.3d at 1016. For instance, in *Rio*, the Ninth Circuit explained that the plaintiff needed to "demonstrate that the facts and circumstances of the present case *necessitated* the district court's intervention."[5] *Id.* (emphasis added). The *Rio* court concluded that this standard was satisfied when the plaintiff "presented the district court with its inability to serve an elusive international defendant, striving to evade service of process." *Id.* Here, unlike *Rio*, Plaintiff has not demonstrated that the facts and circumstances necessitate the Court's intervention. Plaintiff has not presented evidence that Defendant is elusive or striving to evade service of process. While Defendant has refused to waive service pursuant to Rule 4(d) and refused to authorize its domestic counsel to accept service on its behalf, it is within its rights to do so. Therefore, unlike *Rio*, alternative service pursuant to

---

[4] Plaintiff also provides *Nuance Communications* as an example of a case where alternative service was permitted even when a plaintiff did not attempt service pursuant to the Hague Convention. But *Nuance* is distinguishable. In *Nuance*, the district court concluded that plaintiffs could not have served defendant through Russia's central authority because the "Russian Federation 'unilaterally suspended all judicial cooperation with the United States in civil and commercial matters in 2003.'" 626 F.3d at 1237-38 (citation omitted). Here, Plaintiff does not suggest that service through Italy's central authority would be similarly futile.

[5] This holding is consistent with the Advisory Committee Notes to Rule 4. *Nuance*, 626 F.3d at 1239 (quoting FED. R. CIV. P. 4, Advisory Committee Note to Subdivision (f) (1993)) ("The Advisory Committee Note to Rule 4 explains that Rule 4(f)(3) is particularly appropriate where a signatory to the Hague Service Convention has 'refused to cooperate for substantive reasons.'").

Rule 4(f)(3) is inappropriate.

Finally, Plaintiffs argue that attempting service through Italy's central authority would cost time and resources, making it difficult to comply with the Court's previous order to effectuate service within 45 days. *See* Doc. 26.

Although judicial efficiency is a relevant consideration, it is not dispositive. *See Element Cap. Com. Co. Pte. Ltd. v. BOE Tech. Grp. Co.*, No. 2:22-CV-00118-JRG, 2022 WL 4368162, at *3 n.1 (E.D. Tex. Sept. 21, 2022) (rejecting the argument that "delay associated with service through the Hague Convention alone is sufficient to justify a grant of alternative service"). Moreover, it is unclear how long service through Italy's central authority would take. Although Plaintiff has represented that the process "ordinarily requires several months," Doc. 29, Mot., 4., she has not represented that the process cannot be expedited. Moreover, while the parties dispute whether Plaintiff's prior failure to effect service on Defendant was caused by Plaintiff's lack of diligence, Plaintiff—at the very least—had the opportunity to identify the error earlier in the litigation and attempt service through proper means. Therefore, as a matter of fairness, the Court is unwilling to consider a delay that was partially caused by Plaintiff as a justification for allowing Plaintiff to serve Defendant through more convenient alternative means.

In sum, the Court concludes that alternative service would be improper. Accordingly, the court need not consider whether the means of service requested would be consistent with due process.

## IV.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's Opposed Motion for Alternative

Service on Defendant Technogym S.P.A. (Doc. 29). Plaintiff may request additional time to effect proper service on Defendant Technogym S.P.A. if the deadline set by this Court's prior order (Doc. 26) cannot be met.

**SO ORDERED.**

**SIGNED: August 27, 2026.**

_________________________________
**JANE J. BOYLE**
**UNITED STATES DISTRICT JUDGE**